**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ARYEH SIMON AND SASSYA SIMON,**<br>on behalf of themselves and all others<br>similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>**MARRIOTT INTERNATIONAL, INC.,**<br>**STARWOOD HOTELS & RESORTS**<br>**WORLDWIDE, LLC, ARNE SORENSON,**<br>**AND DOES 1-5,**<br><br>     Defendants. | **Case No. _____**<br><br>**June 5, 2019** |

**DEFENDANTS' NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, defendants Marriott International, Inc., Starwood Hotels & Resorts Worldwide, LLC, and Arne Sorenson remove this action from the Superior Court for the Judicial District of Stamford to the United States District Court for the District of Connecticut.

Attached to this notice are copies of the complaint (Ex. A); the docket in the Superior Court (Ex. B); the civil summons from the Superior Court (Ex. C); the return of service filed in the Superior Court (Ex. D); and a notice of the filing of this notice of removal, which defendants will file with the Clerk of the Superior Court (Ex. E).

The grounds for removal follow.

BACKGROUND

1.  On November 30, 2018, Marriott announced a data security incident involving unauthorized access to the Starwood guest reservation database. The incident has resulted in approximately 80 consumer class actions against Marriott and Starwood in jurisdictions throughout the country.

2.      These consumer class actions have been brought by more than 600 named

plaintiffs, and allege putative classes that include every person across the globe whose personal

information was potentially implicated in the Marriott data security incident.

3.      On February 6, 2019, the Judicial Panel on Multidistrict Litigation (JPML)

centralized all actions related to the Marriott data security incident in the United States District

Court for the District of Maryland. *In re: Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,

MDL No. 2879 (ECF No. 191). The purpose of the consolidation was to "serve the convenience

of the parties and witnesses and promote the just and efficient conduct of this litigation." (*Id.* at

1.) The JPML assigned all the related actions to Judge Paul W. Grimm, who is charged with

overseeing and adjudicating all pre-trial proceedings. *See* 28 U.S.C. § 1407(a), (b). Judge Grimm

has since held several hearings (both in person and telephonically), appointed lead plaintiffs'

counsel, established a bellwether process for early adjudication of important issues in the

litigation, and is in the process of setting a case management schedule that includes carefully

established deadlines for discovery, motion practice, and other matters.

4.      The present case is the second of two very similar Connecticut state court class

actions brought by the same plaintiff's counsel. In both, the plaintiffs have sought to carve out a

small subset of the putative class members already before Judge Grimm in the MDL proceeding

in the District of Maryland. The transparent objective behind both these filings is to evade

federal jurisdiction under the Class Action Fairness Act (CAFA), and thus avoid being included

in the MDL.[1]

---

[1] The same counsel also filed yet another action, *Frazer v. Marriott International, Inc.*, 19-cv-1453-PWG (D. Md.). But that action was filed in federal court and has been transferred to Judge Grimm for inclusion in the MDL.

5.      Counsel filed the first action on February 11, 2019, on behalf of Melissa Frank, who alleged she was a dual citizen of the United States and the United Kingdom, and living in the United Kingdom. (Compl. ¶ 8, *Frank v. Marriott Int'l Inc.*, No. 19-cv-326 (D. Conn.), attached as Ex. F.) Although Frank claimed to be one of "hundreds of millions of customers all over the world" affected by the Marriott data security incident, she sought to represent a class consisting only of "American citizens who live abroad and whose Personal Information was accessed, compromised, or stolen in the Data Breach." (*Id.* ¶¶ 59, 61.) She purported to assert various claims under common law and the Connecticut consumer and personal information protection statutes, against Marriott, Starwood, and Marriott's CEO Arne Sorenson. (*Id.* ¶¶ 68-126.)

6.      The *Frank* complaint offered no reason for encompassing only "American citizens who live abroad." But the obvious explanation was that plaintiff's counsel was trying to carve out a class of "stateless" plaintiffs who could not be diverse from defendants under 28 U.S.C. § 1332(d), and thus avoid removal to federal court and transfer into the MDL.

7.      This attempt to avoid federal jurisdiction misfired. American citizens are "stateless" under 28 U.S.C. § 1332(d) only if they are *domiciled* abroad, as opposed to merely *living* abroad while maintaining their permanent domicile in the United States. *See Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).

8.      On March 6, 2019, defendants removed the *Frank* action to the District of Connecticut. (Defs. Notice of Removal, *Frank*, No. 19-cv-326 (D. Conn.), attached as Ex. G.) At the same time, defendants also filed a motion to stay pending decision by the JPML to transfer the case to Judge Grimm. (Defs. Mot. to Stay Pending Action by JPML, *Frank*, No. 19-cv-326 (D. Conn.), ECF No. 6.) In the notice of removal, defendants explained that the putative class

alleged in *Frank* met CAFA's minimal-diversity requirement because there was a reasonable probability that one or more putative class members were domiciled in the United States. (Ex. G, ¶¶ 17-24.)

9.      Plaintiffs' counsel dismissed the *Frank* action the very next day. (Notice of Voluntary Dismissal, *Frank*, No. 19-cv-326 (D. Conn.), attached as Ex. H.)

10.      Two months later, on May 10, 2019, defendants were served with the summons and complaint in the present action in the Superior Court for the Judicial District of Stamford, Connecticut. (Ex. D.) The named plaintiffs this time were Aryeh and Sassya Simon. (Ex. A.) The *Simon* complaint is identical in almost all respects to the one in *Frank*. It was filed by the same counsel, and it has the same core narrative language throughout, the same causes of action, the same defendants, and the same requests for relief. (*Compare* Ex. A *with* Ex. F.)

11.      Indeed, the Simons were members of the putative class defined in *Frank*, for they too allege they are dual citizens of the United States and a foreign country, in this case Israel, and that they are living abroad. (Ex. A, ¶ 12.) The only real difference is that the Simons claim not merely to be living in Israel, but "domiciled" there. (*Id.*) Accordingly, the class defined in *Simon* was carefully truncated to include only "U.S. citizens who are *domiciled* abroad and whose Personal Information was compromised, accessed, or stolen in the Data Breach." (*Id.* ¶ 66) (emphasis added).

12.      The Simons and their counsel contend that this artful pleading insulates them from removal, but they are incorrect.

## REMOVAL IS TIMELY

13.      Plaintiffs dated their complaint May 7, 2019, and served defendants with the complaint and summons on May 10, 2019. The complaint, summons, and return of service were

filed on the state court docket on May 17, 2019. Defendants timely removed this action within 30 days of their receipt of the complaint. 28 U.S.C. § 1446(b).

### THIS COURT HAS ORIGINAL JURISDICTION

14.    Plaintiffs filed this case as a class action under Connecticut Practice Book §§ 9-7, 9-8, and 9-9, which authorizes actions brought by one or more representative persons and which is substantially similar to Rule 23 of the Federal Rules of Civil Procedure. Thus, the complaint constitutes a class action under CAFA. 28 U.S.C. § 1332(d)(1)(B).

15.    This Court has original jurisdiction over the complaint under CAFA because there is a reasonable probability that this action: (i) involves a minimal diversity of citizenship among the parties; (ii) involves, in the aggregate, an amount in controversy exceeding $5 million; and (iii) includes over 100 proposed plaintiff class members. *See* 28 U.S.C. § 1332(d); *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014).

### MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

16.    Federal courts have jurisdiction under CAFA if any putative class member is a citizen of a state different from any defendant at the time of removal. 28 U.S.C. § 1332(d)(2)(A); *F5 Capital v. Pappas*, 856 F.3d 61, 76 (2d Cir. 2017) (CAFA jurisdiction assessed "at the time of removal"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 628 (S.D.N.Y. 2013) (minimal diversity met where "at least one member of the putative class is diverse from at least one defendant").

17.    Marriott is a corporation organized under the laws of Delaware with its principal place of business in Maryland. For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see*

*also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006). Thus, Marriott is a citizen of Delaware and Maryland.

18.     Starwood is a limited liability company organized under the laws of Maryland with its principal place of business in Maryland. CAFA provides that an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Starwood thus is a citizen of Maryland.

19.     Mr. Sorenson is a United States citizen who is domiciled in the District of Columbia. For purposes of diversity jurisdiction, an individual is deemed a citizen of the state where he or she is domiciled. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State.") (citations omitted); 28 U.S.C. § 1332(e) ("The word 'States,' as used in this section, includes . . . the District of Columbia[.]"). Thus, Mr. Sorenson is a citizen of the District of Columbia.

20.     Plaintiffs allege that because they purport to represent only "American citizens domiciled abroad," their case is not subject to removal. (Ex. A, ¶ 10.) Specifically, plaintiffs contend: "No member of this class satisfies the minimal diversity requirement of [CAFA] because it consists entirely of American citizens domiciled abroad[.]" (*Id.* ¶ 66.)

21.     But plaintiffs cannot evade federal jurisdiction in this manner. The purpose of CAFA is "to mak[e] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 408 (6th Cir. 2008) (quoting S. Rep. No. 109-14, at 5 (2005)). CAFA was designed to create "efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single

federal court" and to place "the determination of more interstate class action lawsuits in the proper forum—the federal courts." *Id.* (quoting S. Rep. No. 109-14, at 5). As such, "CAFA's 'provisions [are meant to] be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (quoting S. Rep. No. 109-14, at 43).

22.     Courts have relied on CAFA's broad reach to set aside artificial limitations on putative classes such as the one created by counsel in this case (and in the *Frank* case before it). For example, in *Freeman*, plaintiffs' counsel divided an environmental lawsuit into five state court cases—each one seeking just under $5 million in damages—in a blatant attempt to undercut CAFA's amount-in-controversy requirement. 551 F.3d at 406-07. The Sixth Circuit found "no colorable basis" for this pleading tactic "other than to frustrate CAFA," and treated the cases as one lawsuit in which the $5 million threshold was satisfied. *Id.* at 407, 409. In so holding, the court explained that CAFA does "not [] permit the splintering of lawsuits solely to avoid federal jurisdiction in the fashion done in this case." *Id.* at 408; *see also Proffitt v. Abbott Labs.*, 2008 WL 4401367, at *2-5 (E.D. Tenn. Sept. 23, 2008) (denying motion to remand where there was no plausible reason, other than avoiding CAFA, "for selecting the one-year divisions and creating eleven lawsuits to litigate one conspiracy that involves one defendant and one drug").

23.     The imperative to protect federal jurisdiction under CAFA is even greater where, as here, an MDL proceeding covering the same issues—and the same putative class members— is already underway. In *In re Kitec Plumbing Systems Products Liability Litigation*, 2010 WL 11618052, at *1-2 (N.D. Tex. Aug. 23, 2010), while an MDL involving allegedly defective HVAC pipe was proceeding in the Northern District of Texas, the residents of two small

communities in Washington filed class actions in state court asserting the same claims. The cases were removed to federal court and transferred to the MDL in Texas, where the removed plaintiffs filed motions for remand on the basis that CAFA's amount-in-controversy threshold was not satisfied in their separate respective actions. *Id.* at *2, *4.

24.     The MDL court in *Kitec* ignored the artificial way the removed plaintiffs curtailed their putative classes and denied the motions to remand. *Id.* at *8. The plaintiffs had pled under the $5 million threshold by carving themselves out of a putative Washington class that was already before the *Kitec* MDL. *Id.* at *6. Because the claims of the community members who the removed plaintiffs purported to represent were already part of the larger Washington class, the court concluded that it could "pierce the pleadings in order to determine the propriety of federal jurisdiction," and look to the amount sought by the Washington class in the MDL to satisfy the amount-in-controversy requirement. *Id*.

25.     The *Kitec* court further held that allowing the removed plaintiffs to proceed in state court would erode the judicial efficiencies created by the MDL and undermine CAFA's aim of eliminating both gamesmanship and copycat actions. *Id.* at *6-7. The court further noted that the MDL before it "implicates multistate or national interests," and that the removed actions threatened to "create duplicative, overlapping or even identical litigation to [the MDL] if they were to be remanded." *Id.* at *7.

26.     The reasoning in *Kitec* applies here with equal if not greater force. Indeed, there are at least two other putative class actions now before Judge Grimm that encompass all of the individuals who are part of the artificially truncated class alleged in the *Simon* complaint. In *Mendez v. Marriott International, Inc.*, an American citizen living in the United States and a German citizen living abroad seek to represent "[a]ll persons who provided PII . . . to Marriott,

and whose PII was accessed, compromised, or stolen from Marriott during the Data Breach."
(Compl. ¶¶ 8, 10, 59, *Mendez v. Marriott Int'l, Inc.*, No. 19-cv-520 (D. Md.), ECF No. 1; *see also* Compl. ¶ 46, *Trager v. Marriott Int'l, Inc.*, No. 18-cv-3745 (D. Md.), ECF No. 1 (defining putative class to include "[a]ll persons whose PII was accessed, compromised, or stolen from Marriott as a result of the Data Breach[,]" regardless of citizenship or place of domicile).)

27.     As in *Kitec*, this Court may look past the artificial manner in which the Simons have attempted to limit their putative class, because their claims "are already properly before [the MDL] Court." 2010 WL 11618052, at *6.

28.     Moreover, as in *Kitec*, allowing plaintiffs to purse their claims in a Connecticut state court runs counter to both CAFA and the MDL. Plaintiffs are pursuing the same damages and injunctive relief arising from the same alleged events that are at issue in the MDL, and they are doing so on behalf of a small subset of the same individuals whose interests are already being adjudicated in the MDL.

29.     The whole purpose of having an MDL is to enable "the resolution of mass disputes by bringing similarly situated litigants from around the country, and their lawyers, before one judge in one place at one time." Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2340 (2008). The centralized proceedings are designed to avoid duplication of discovery, streamline key issues, prevent inconsistent rulings, and conserve the resources of the judiciary, the parties, and their counsel. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("Consistency as well as economy is [] served" by single MDL court resolving common issues); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) ("The purpose of [a centralized MDL proceeding] is to further judicial economy and eliminate the potential for conflicting pretrial rulings.") (citing Weigel, *The Judicial Panel on*

*Multidistrict Litigation*, 78 F.R.D. 575 (1978)). The Simons' artful pleading threatens to undermine all these goals.

30.     For all these reasons, the Court may look to the putative class members in the *Mendez* and *Trager* actions that are part of the MDL to establish minimal diversity in this case. And because at least one defendant and one member of the *Mendez* and *Trager* classes were citizens of different states at the time of removal, minimal diversity exists in this case.

31.     Moreover, minimal diversity under CAFA exists here for another reason as well. The *Simon* complaint is effectively an amended version of the *Frank* complaint. Both pleadings assert the same six counts under Connecticut law against the same defendants, rely on the same factual allegations, and seek the exact same relief. (*Compare* Ex. A *with* Ex. F.). The only significant difference is that the putative class has been modified to represent only American citizens *domiciled* abroad, rather than those who are merely *living* abroad, in a second misguided effort to avoid CAFA and the MDL. (Ex. A, ¶¶ 10, 66).

32.     Courts have rejected similar attempts by plaintiffs to alter their class definitions post-removal to secure remand to state court. *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277-79 (9th Cir. 2017) (reversing remand order based on post-removal amendment narrowing class of California merchants to "citizens"); *Hargett v. RevClaims, LLC*, 854 F.3d 962, 966-67 (8th Cir. 2017) (refusing to consider post-removal amendment that would have narrowed class of Arkansas "residents" to "citizens" in reversing remand order); *see also In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101-02 (2d Cir. 2015) (holding that amendment eliminating class claims after removal did not divest court of CAFA jurisdiction).

33.     Courts also have barred plaintiffs from voluntarily dismissing an action removed under CAFA for the sole purpose of filing an amended or duplicative action that evades federal

jurisdiction. *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1214 (8th Cir. 2011) (reversing

order granting voluntary dismissal of putative class action where plaintiff acknowledged intent to

refile in state court; "Thatcher appears to have sought dismissal merely to deprive the federal

court of jurisdiction"); *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 2008 WL 4104355, at

*8-10 (N.D. Ill. Aug. 29, 2008) (rejecting voluntary dismissal of 53 named plaintiffs from

removed CAFA mass action; plaintiffs "should not [] be permitted to file a new CAFA-proof

action in a state court venue they believe would be more favorable to them, forcing defendants to

litigate duplicative actions").

34.    Counsel in this case should not be able to avoid the prohibition of post-removal

amendments by the artifice of having a putative member of the first class file a virtually identical

action with an even more artificially limited putative class. As such, the Court may ignore the

*Simon* class definition and find minimal diversity based on the class definition in *Frank*, which

encompassed all American citizens living abroad.

### THE CAFA AMOUNT IN CONTROVERSY IS SATISFIED

35.    Plaintiff's complaint also meets CAFA's second requirement that the amount in

controversy exceed $5 million. *See* 28 U.S.C. § 1332(d)(2).

36.    Courts "generally evaluate jurisdictional facts, such as the amount in controversy,

on the basis of the pleadings, viewed at the time when defendant files the notice of removal."

*Blockbuster*, 472 F.3d at 56-57. Where, as here, the complaint fails to allege a specific damages

amount, courts may rely on allegations in the notice of removal. *See Mehlenbacher v. Akzo*

*Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (courts "look first to the plaintiffs' complaint

and then to [the defendant's] petition of removal" in determining jurisdiction).

37.    "[A] defendant's notice of removal need include only a plausible allegation that

the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554. Indeed, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553-54.

38.     Plaintiffs seek a panoply of monetary and injunctive relief, including compensatory, statutory, treble, and punitive damages; restitution and disgorgement; attorneys' fees, costs and expenses; prejudgment and post-judgment interest; and any other relief the "Court deems just and proper" for a putative class of potentially millions of individuals. (Ex. A, Prayer for Relief.)

39.     Plaintiffs' request for disgorgement and restitution alone is enough to satisfy the amount-in-controversy requirement. They seek "disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions and practices[.]" (*Id.*) Plaintiffs further allege that Marriott reported $22 billion in revenue in 2017. (*Id.* ¶ 19.) Although defendants do not concede that plaintiffs will ultimately be able to establish any damages or entitlement to injunctive relief, CAFA's $5 million threshold is met based on the allegations and requests for relief in their complaint.

40.     In addition, this requirement is satisfied for the same reason minimal diversity exists in this case. Because the *Simon* class is subsumed within the *Mendez* and *Trager* putative classes already in the MDL, and is structured solely to avoid CAFA jurisdiction, the Court may look to the allegations in the actions already part of the MDL to establish that the amount in controversy exceeds $5 million. *See Freeman*, 551 F.3d at 406-08; *Kitec*, 2010 WL 11618052, at *5-7.

41.     Thus, there is a reasonable probability that the amount-in-controversy element is

satisfied in this case for purposes of CAFA jurisdiction, and solely for that purpose.

### PLAINTIFFS ALLEGE A PUTATIVE CLASS WITH OVER 100 PROPOSED MEMBERS

42.     The complaint also satisfies CAFA's numerosity requirement because there is a reasonable likelihood the putative class includes more than 100 members.

43.     Although plaintiffs do not allege the number of members in the putative class, they allege that "hundreds of millions of customers all over the world" were affected by the data security incident. (Ex. A, ¶ 69.) And, as plaintiffs' counsel pointed out in the *Frank* complaint, there are approximately 9 million American citizens living abroad according to the most recent data released by the United States Department of State. (Ex. F, ¶ 61.)

44.     Given the size of these populations, there is a reasonable probability that the putative class consists of more than 100 members.

45.     Additionally, this requirement is satisfied for the same reason minimal diversity exists in this case. Because the *Simon* class is subsumed within the *Mendez* and *Trager* putative classes already in the MDL, and is structured solely to avoid CAFA jurisdiction, the Court may look to the number of proposed class members in *Mendez* and *Trager* to satisfy the numerosity requirement. *See Freeman*, 551 F.3d at 406-08; *Kitec*, 2010 WL 11618052, at *5-7.

46.     Thus, the final jurisdictional requirement under CAFA is met.

### RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

47.     Nothing in this Notice is intended or should be construed as an express or implied admission by defendants of any fact alleged by the plaintiffs, of the validity or merit of any of plaintiffs' claims and allegations, or as a limitation of any of defendants' rights, claims, remedies or defenses in connection with this action.

WHEREFORE, defendants respectfully request that the above-captioned action filed in the Superior Court for the Judicial District of Stamford be removed to this Court.

Respectfully submitted,

/s/ Brian W. Song
Brian W. Song (Bar No. 28576)
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.271.1505
Fax: 212.589.4201
Email: bsong@bakerlaw.com

*Attorney for the Defendants*

## CERTIFICATE OF SERVICE

I, Brian W. Song, certify that on June 5, 2019, the foregoing was served via email and

United States Mail on the following:

Michael J. Jones
170 Mason Street
Greenwich, CT 06830
mjones@ibolaw.com

Deborah H. Renner
Claiborne R. Hane
William L. Geraci
Pierce Bainbridge Beck Price & Hecht LLP
20 West 23rd St., Fifth Floor
New York, NY 10010
drenner@piercebainbridge.com
chane@piercebainbridge.com
wgeraci@piercebainbridge.com

Thomas D. Warren
Pierce Bainbridge Beck Price & Hecht LLP
600 Wilshire Blvd., Suite 500
Los Angeles, CA 90017
twarren@piercebainbridge.com

Theodore J. Folkman
Pierce Bainbridge Beck Price & Hecht LLP
361 Newbury St., 5th Floor
Boston, MA 02115
tfolkman@piercebainbridge.com

*/s/ Brian W. Song*
*Attorney for the Defendants*