**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| ARYEH SIMON, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case Nos.: PWG-19-2879; PWG-19-1792 |
| MARRIOTT INTERNATIONAL, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Aryeh and Sassya Simon, on behalf of themselves and others similarly situated, filed suit in state court in Connecticut seeking permanent injunctive relief and monetary damages from Defendants[1] for claims arising out of the data breach incident that is the subject of the Multidistrict Litigation against Marriott ("Marriott MDL") pending before me, *In re Marriott*, No. PWG-19-2879. *See* Compl., ECF No. 1-1. Marriott removed the action to federal court in Connecticut; the case was transferred to this Court as part of the Marriott MDL, and the Simons filed a Motion to Remand to Connecticut state court for lack of subject matter jurisdiction. *See* Pls.' Mot., ECF No. 28; Pls.' Mem. 1, ECF No. 29. Because this Court has jurisdiction over class action claims that subsume the Simons' claims, this Court has jurisdiction over the Simons' claims, and the Motion to Remand is denied.

---

[1] Plaintiffs brought this action against three Defendants: Marriott International, Inc., Starwood Hotels & Resorts Worldwide LLC, and Arne M. Sorenson as President and Chief Executive Officer of Marriott. Compl., ECF No. 1-1. I will refer to them collectively as "Marriott."

## Factual Background

To provide context, I begin with an action that another litigant, Melissa Frank, filed against Marriott. Frank filed suit in Connecticut state court against Marriott on behalf of "American citizens who *live abroad* and whose Personal Information was accessed, compromised, or stolen in the [Marriott] Data Breach." *Frank* Compl. ¶ 59, ECF No. 1-6 (emphasis added); *see Frank v. Marriott Int'l Inc.*, No. 19-cv-326 (D. Conn.). Marriott removed the case to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1332(d). *Frank* Notice of Removal, ECF No. 1-7. Marriott argued the court had diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711, because there was likely one person in Frank's action domiciled in the United States in a state other than Delaware or Maryland, where Marriott is a citizen, and therefore CAFA's requirement of minimal diversity was met.[2] *Id.* The next day, plaintiff's counsel voluntarily dismissed *Frank*. *Frank* Notice of Voluntary Dismissal, ECF No. 1-8. The same counsel then filed this action on behalf of the Simons, again in Connecticut state court. Compl. 1.[3]

The Simons seek to represent "[a]ll U.S. citizens who are *domiciled abroad* and whose Personal Information was compromised, accessed, or stolen in the [Marriott] Data Breach." Compl. ¶ 66 (emphasis added). Marriott removed the suit to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1332(d), based on diversity jurisdiction under CAFA, and sought its inclusion into the Marriott MDL. *See* Defs.' Notice of Removal, ECF No. 1. The Judicial Panel on Multidistrict Litigation transferred it to this Court for inclusion in the

---

[2] 28 U.S.C. § 1332(d)(2)(A).
[3] Citations are to the Simons' individual case, not the Marriott MDL, unless otherwise noted.

MDL, despite the Simons' efforts to keep the action in state court. J.P.M.L. Transfer Order, ECF No. 19.

The Simons have filed a Motion to Remand, arguing that this Court does not have subject matter jurisdiction over this action because CAFA's minimal diversity requirement is not met. *See* Pls.' Mot. & Mem. The parties have fully briefed the motion. ECF Nos. 29, 36, 38. A hearing is not necessary. *See* Loc. R. 105.6.

## **Standard of Review**

If a federal court determines that it does not have jurisdiction over a case that has been removed from state court, the federal court must remand the case back to state court. *See* 28 U.S.C. § 1447(c). In considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 702 (D. Md. 1997) (quoting *Creekmore v. Food Lion, Inc.*, 797 F. Supp. 505, 507 (E.D. Va. 1992)).

The burden of establishing jurisdiction rests with the party seeking removal, here Marriott. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004). The party asserting subject matter jurisdiction must prove by a preponderance of the evidence the facts necessary to establish jurisdiction. *Vest v. RSC Lexington, LLC*, No. 16-3018-CMC, 2016 WL 6646419, at *7 (D.S.C. Nov. 10, 2016). I can consider facts outside the pleadings and am not limited by the allegations in a plaintiff's complaint when evaluating a motion to remand. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) (considering the entire record in evaluating a motion to remand); *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 819 (E.D. Va. 2005) (holding that the court has "authority to look beyond the pleadings and consider summary-judgment-type evidence, such as the affidavits and the depositions accompanying either a notice of removal or a motion to remand").

**Discussion**

The Simons do not challenge Defendants' assertions in their notice of removal that CAFA's requirements for numerosity (100 plaintiffs), 28 U.S.C. § 1332(d)(5)(B), and amount-in-controversy (five million dollars), 28 U.S.C. § 1332(d)(2) are both met. *See* Pls.' Mot. & Mem.; Defs.' Notice of Removal. Therefore, the only issue here is whether minimal diversity exists under CAFA.

Under CAFA, minimal diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). It is not disputed that the class the Simons seek to represent does not support minimal diversity jurisdiction if only the allegations within the four corners of the Complaint are considered. The Simons seek to represent "[a]ll U.S. citizens who are domiciled abroad and whose Personal Information was compromised, accessed, or stolen in the [Marriott] Data Breach." Compl. ¶ 66. Because U.S. citizens who are domiciled abroad are "stateless" (and therefore not a citizen of any State), they cannot be diverse from any defendant. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (holding that, for diversity jurisdiction purposes, one must be a citizen of the United States *and* domiciled in a State); *see also Herrick Co., Inc. v. SCA Commc'ns*, 251 F.3d 315, 322 (2d Cir. 2001) (holding that a U.S. citizen that is domiciled abroad cannot be diverse from a U.S. citizen that is also domiciled in a State).

Marriott argues that this Court has jurisdiction nonetheless because federal jurisdiction already attached to two CAFA class actions in this MDL before the Simons filed their suit, that broadly defined their classes as: "[a]ll persons [whose personal identifying information] was accessed, compromised, or stolen from Marriott" because of the data breach. *See* Compl. ¶ 59, ECF No. 1 in *Mendez v. Marriott Int'l, Inc.*, No. PWG-19-520 (D. Md.) (filed Dec. 17, 2018);

Compl. ¶ 46, ECF No. 1 in *Trager v. Marriott Int'l, Inc.*, No. PWG-18-3745 (D. Md.) (filed Dec. 5, 2018). In Marriott's view, the *Mendez* and *Trager* classes are broad enough to include within them the Simons' claims and those of all the putative class members that they purport to represent. Defs.' Opp'n 6. And because the Simons' complaint was filed after both *Mendez* and *Trager* and the opening of the Marriott MDL, this Court already had jurisdiction over the Simons' claims through the Marriott MDL. *Id.* at 7. Marriott also argues that, because there is evidence that the Simons' complaint is an attempt to skirt federal jurisdiction and CAFA's efficiency goals, and because the Simons are, in essence, trying to divest this court of jurisdiction over class members whose claims properly are before it, this Court has authority to deny the Simons' motion to remand in order to maintain its existing jurisdiction. *Id.* at 4. I agree.

In reaching this result, I must acknowledge that this issue appears to be one of first impression. My research has not yielded any case from the Fourth Circuit, this Court, or another jurisdiction, that has dealt with the narrow issue before me: Can a class action plaintiff pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing MDL by manipulating the allegations in their complaint to skirt the minimal diversity requirement of CAFA? However, case law addressing the federal court's jurisdiction and parties' efforts to avoid it under analogous circumstances is informative and supports the conclusion which I have reached.

### A. Crafting a complaint to avoid CAFA jurisdiction

While the old chestnut that the plaintiff is the "master of the complaint" is true, there are limits to that sovereignty. For example, a plaintiff cannot tailor a suit (or series of suits) to avoid federal jurisdiction by manipulating the amount in controversy or number of class members to fall short of the CAFA requirements. For example, in *Freeman v. Blue Ridge Paper Prods., Inc.*, on

review of a motion to remand, the Sixth Circuit held that the plaintiffs were not permitted to divide a lawsuit into five separate state court cases—each one seeking under five million dollars in damages—to avoid CAFA jurisdiction. 551 F.3d 405, 406-07 (6th Cir. 2008). The court required the aggregation of the five cases after defendant removed to federal court because it determined, after looking beyond the pleadings, that there was "no colorable basis" for the pleading tactic used by plaintiffs "other than to frustrate CAFA," and that splintering what, in essence, was a single lawsuit into multiple suits did not deprive the federal court of jurisdiction. *Id.* at 406-09.[4] The court noted that the purpose of CAFA is to "allow defendants to defend large interstate class actions in federal court," and concluded that CAFA's purpose justified the forced aggregation, notwithstanding the plaintiffs' desire to balkanize their claims into a series of suits to remain in state court. *Id.* at 407. The court reasoned that "[enacting] CAFA was necessary because the previous law 'enable[d] lawyers to "game" the procedural rules and keep nationwide or multi-state actions in state courts.'" *Id.* at 408 (quoting S. Re. No. 109-114, at 5 (2005)).

*In re Kitec*, No. 09-md-2098-F, No. 10-cv-1193-F, No. 10-cv-1192-F, 2010 WL 11618052, at *1 (N.D. Tex. Aug. 23, 2010), provides similar guidance. In that case, two plaintiffs filed class actions in state court (the *Steiner* class and the *Hillary* class). Both plaintiffs were represented by

---

[4] Other Circuits have distinguished *Freeman*, but those cases do not detract from its holding that a plaintiff may not evade CAFA jurisdiction while simultaneously expanding recovery. 551 F.3d at 409. For example, in *Tanoh v. Dow Chemical Co.*, the Ninth Circuit held that seven state court actions, each with fewer than 100 plaintiffs, should not be treated as a single "mass action" under CAFA. 561 F.3d 945 (9th Cir. 2009). The court concluded that the plaintiffs were not clearly evading CAFA jurisdiction by filing several "copycat" actions, like the *Freeman* plaintiffs, because the plaintiffs were not representing a nationwide class and were not alleging the same injuries. *Id.* at 954. The court noted that if the seven actions were copycat actions, the holding could be different because "competing claims to represent the same class of plaintiffs might raise concerns that overlapping or identical claims would be litigated in multiple jurisdictions." *Id.* Thus, the Ninth Circuit's holding would support aggregation in the context of this case because the Simons are representing a class of plaintiffs already before this Court and alleging the same injuries.

6

the same counsel and the complaints had overlapping claims for relief, but the class members lived in different communities in Washington State. The defendant sought inclusion of the actions into an already existing MDL that had within it a class action (*Fliss*) defined broadly enough to include the *Steiner* and *Hillary* members, so the defendant removed the actions to federal court. *Id.* at *2. The plaintiffs filed motions to remand, arguing that each complaint alleged that recovery of its respective class would be less than five million dollars. *Id.* The court held that the *Steiner* and *Hillary* plaintiffs could not avoid the original federal jurisdiction it had acquired by the filing of the *Fliss* class action, which satisfied CAFA's requirements, and conferred federal jurisdiction over the claims in the *Steiner* and *Hillary* suits. *Id*. at *6. The court relied upon *Freeman* in holding that the claims must be aggregated with *Fliss* because, in looking beyond the pleadings, there was no colorable basis for separating plaintiffs by their geographical location and because the plaintiffs sought to expand their recovery by filing actions that could allow a member plaintiff to recover from both the state court actions and the *Fliss* action. *Id*.

Here, both CAFA and MDL considerations warrant looking beyond the pleadings like in *Freeman* and *In re Kitec*, respectively. Both *Mendez* and *Trager* are CAFA actions that allege Marriott's liability for injuries sustained by the data breach—classes that are not only multi-state, but international. *See Mendez* Compl. ¶ 59; *Trager* Compl. ¶ 46.[5] Because the Simons' claims are wholly included in both *Mendez* and *Trager*, the Simons are attempting to represent class members already before the court in those actions. This defeats the purpose of CAFA by forcing litigation of the same claims, in both state and federal court. Although the Simons seek to plead around the minimal diversity requirement of CAFA, rather the amount in controversy like in

---

[5] As noted above, the *Mendez* and *Trager* actions define their classes broadly: "[a]ll persons [whose [personal identifying information] was accessed, compromised, or stolen from Marriott" because of the data breach. *See Mendez* Compl. ¶ 59; *Trager* Compl. ¶ 46.

7

*Freeman*, the intent of this manipulation remains the same—divesting this court of jurisdiction it already has acquired.

Moreover, neither the Simons' Complaint nor their Motion to Remand offers any legitimate basis for the need to litigate their claims separately from the MDL because of their geographical locations—having a domicile abroad. Consequently, they do not offer any colorable basis for limiting their claims by a characteristic that evades federal jurisdiction. *See In re Kitec*, 2010 WL 11618052, at *1. Additionally, the Simons are seeking to expand their recovery because they could recover from both their state court action and from the MDL, from either (or both) the *Mendez* or *Trager* actions.

Furthermore, like in *Freeman*, there is ample evidence here that the Simons' complaint was designed to manipulate federal jurisdiction, albeit by defeating the diversity requirement rather than the amount-in-controversy requirement. As noted, prior to the filing of the Simons' suit, another plaintiff, Frank, brought a nearly identical class action against Marriott in Connecticut state court and voluntarily dismissed it the day after Marriott removed it to federal court. Then, the same attorneys filed suit on behalf of the Simons in the same state court, revising slightly the class definition from *Frank* in a transparent effort to avoid federal jurisdiction. Specifically, the attorney changed only "*live* abroad" to "*domiciled* abroad," to prevent an argument that a plaintiff living abroad nonetheless was domiciled in the United States. *Compare Frank* Compl. ¶ 59, *with* Compl. ¶ 66 (emphasis added).

The policy justifications for finding federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint, such as preventing inefficiency and "ensuring 'Federal court consideration of interstate cases of national importance,'" hold even more true in the MDL context. *See Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 595 (2013) (quoting § 2(b)(2),

119 Stat. 5).  The primary objective of an MDL is to "promote the just and efficient conduct of . . . actions" that involve common questions of fact.  28 U.S.C. § 1407(a).  This interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual) actions into one lawsuit for purposes of pretrial proceedings.

Allowing the Simons to manipulate CAFA would be harmful here because it could disrupt the orderly progress of the pretrial process in the Marriott MDL.  While the Simons' action was pending in the District of Connecticut, they tried to force Marriott to file an answer immediately, in contradiction to the schedule set by this Court; refused to agree to a stay while the case was transferred to the Marriott MDL; and objected to an extension of time, resulting in Marriott filing an emergency motion. Defs.' Opp'n 10.  Harm to putative class members and defendants is exactly what MDLs seek to avoid by streamlining the litigation process and encouraging settlement. *Manual for Complex Litigation (Fourth)* (2004) 22.315 (explaining the bellwether process).  Here, granting the Motion to Remand would open the door for possibly inconsistent verdicts, as well as duplicative costs to both Defendants and putative class members.

### B. Fraudulent Joinder

Lastly, a plaintiff's ability to amend a complaint to avoid federal jurisdiction is limited by the principle of fraudulent joinder.  The fraudulent joinder doctrine permits removal to federal court when a non-diverse party is a defendant in a case, if that party is not a proper defendant, but rather named only to defeat diversity jurisdiction.  *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).  The doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  *Mayes v. Rapoport*,

9

198 F.3d 457, 461 (4th Cir. 1999). In *Mayes*, the Fourth Circuit found the fraudulent joinder doctrine to be dispositive when evaluating whether to allow amendments to a complaint *post-removal*. *Id.* at 463. The court held that, when the district court is evaluating a request to amend a complaint, it should carefully scrutinize any attempt to add a nondiverse defendant immediately after removal and "be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." *Id.*

What the Simons are attempting to do here is analogous to what the fraudulent joinder rule prohibits, and further militates against granting a remand to state court. In fraudulent joinder cases, the district court may retain jurisdiction over cases that it would be forced to remand if the court were bound to determine its jurisdiction by the face of the plaintiff's pleadings alone. The policy which the fraudulent joinder rule promotes is no less applicable here.

### C. When this Court should not exercise jurisdiction

An action involving an MDL defendant could be legitimately subject to state court jurisdiction and not within the purview of federal jurisdiction. The *Manual for Complex Litigation* even contemplates coordination between cases in the federal and state court systems by harmonizing scheduling hearings, discovery schedules and rulings, and witness availability. *See Manual for Complex Litigation (Fourth)* § 31.312 (2004); *see also Guidelines and Best Practices for Large and Mass-tort MDLs (Second)* 81 (2018). But this coordination assumes the existence of legitimately filed state court actions for which there is no basis to exercise federal jurisdiction—not federal claims genetically altered to keep them in state court. Moreover, coordination is not feasible if the schedule in the state court case interferes with the schedule in the MDL—a circumstance likely to occur here if a remand is ordered, given the tactics previously employed by the Simons while their case was pending in Connecticut.

For the reasons explained above, the Motion to Remand, ECF No. 28, is DENIED.

September 20, 2019  /S/
Date  Paul W. Grimm
  United States District Judge

eal